**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 98-40902**

---

**JOSE ARMANDO SAENZ, et al.,**

Plaintiffs-Appellants,

**v.**

**HELDENFELS BROTHERS, INC; et al.,**

Defendants,

**BROOKS COUNTY; BETO GONZALEZ, Brooks County Deputy Sheriff**,

Defendants-Appellees.

---

**Appeals from the United States District Court
for the Southern District of Texas**

---

July 30, 1999

Before JONES, DUHÉ, and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants are the estates and surviving family members of Graciela Saenz and Jose Hinojosa, who were killed when Jose Hilario Zuniga, a drunk driver, struck their automobile. Appellants sued under 42 U.S.C. § 1983, alleging that (1) Deputy Sheriff Beto Gonzalez abused his governmental authority by ordering his partner, Reserve Deputy Antonio Martinez, to refrain from investigating Zuniga for drunken driving minutes before the accident occurred; and (2) Brooks County had a custom or policy tolerating Gonzalez's refusal to enforce drunk driving laws. We

agree with the district court that appellants have not asserted the deprivation of a right secured by the United States Constitution.

Since this is an appeal from a grant of summary judgment in favor of Gonzalez and Brooks County, this court reviews the facts in the light most favorable to the appellants, with all inferences and fact disputes resolved in their favor. See Davidson v. Glickman, 169 F.3d 996, 998 (5th Cir. 1999). The facts of this case, when viewed in such a light, show that on the evening of June 19, 1995, Deputy Sheriff Gonzalez and Reserve Deputy Martinez approached the intersection of State Highway 285 and County Road 210 and pulled behind a red pickup truck standing at a stop sign. Gonzalez told Martinez that the truck belonged to Zuniga. Because the truck remained stationary at the stop sign for an extended time, Martinez suggested that the officers investigate. Gonzalez, the ranking officer, rejected the idea, telling Martinez that Zuniga is "always drunk and I always stop the guy. So just leave him alone."[1] A discussion ensued between Martinez and Gonzalez. Martinez, suspecting that Zuniga was drunk,[2] wished to investigate

---

[1]Martinez also testified that Gonzalez said "he's always drinking so I have stopped him several times so I know he's drinking or he's drunk."

[2]At this point, the officers had no concrete evidence that Zuniga was intoxicated. According to Martinez, he suspected that Zuniga was drunk because Gonzalez stated that Zuniga was often drunk, Zuniga stood at the stop sign for an extended period of time, and Zuniga eventually made a wide right turn.

Zuniga, but Gonzalez ordered Martinez to leave him alone,[3] uttering a crude Spanish imprecation against Zuniga. The two officers remained behind Zuniga at the stop sign for approximately 15 minutes and, per Gonzalez's orders, never investigated the situation.

A few minutes later, the dispatcher called for the officers' assistance at the scene of an automobile accident. Zuniga's truck had crashed into an oncoming vehicle, killing two occupants and injuring three others. Zuniga was also severely injured. Tests confirmed that Zuniga was intoxicated and had a blood alcohol level of .21 -- well over the legal limit.

The cornerstone of appellants' claim is that Gonzalez abused his governmental authority in violation of the Due Process Clause by ordering Martinez not to stop Zuniga (even though he was suspected of being drunk) and by implying that Zuniga could, roughly translated, "go kill himself."[4] In addition, appellants allege that Brooks County had a custom or policy allowing Gonzalez to interfere with junior officers' attempts to arrest drunk drivers. The district court granted summary judgment in favor of

---

[3]Gonzalez apparently ordered, "I'm telling you don't do anything to him because I don't want him to dirty my car or smell my car up or . . . throw up in my car."

[4]The appellants have argued their theory of liability ambivalently. At a hearing in the district court, appellants' counsel stated that "the 'state-created danger' [theory is] the heart of this case." At oral arguments before this court, however, counsel stated that the "abuse of government power" theory is "the heart and soul of our case." We address both arguments.

3

Gonzalez, holding that, under <u>DeShaney v. Winnebago County Dep't of Soc. Serv.</u>, 489 U.S. 189, 109 S. Ct. 998 (1989), Gonzalez had no constitutional duty to protect the appellants' lives from Zuniga's conduct and was therefore entitled to qualified immunity. The court also held that since the appellants did not allege a constitutional injury against Gonzalez, their claim against Brooks County likewise failed. State law claims were severed and remanded.

## DISCUSSION

To prevail on § 1983 claim against a state official performing a discretionary function, and to overcome the qualified immunity defense, a plaintiff must show that the officer violated "clearly established . . . constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The first inquiry is whether the appellants have alleged the deprivation of a constitutional right. <u>See</u> <u>Conn v. Gabbert</u>, __ U.S. __, __, 119 S. Ct. 1292, 1295 (1999); <u>County of Sacramento v. Lewis</u>, __ U.S. __, __ n.5, 118 S. Ct. 1708, 1714 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."). Only if the right exists do we need to determine whether that right was clearly established at the time of the alleged violation.

4

In this case, appellants have asserted that Gonzalez was "aware of the danger that Zuniga posed, and by ordering Martinez not to stop him, rendered the Plaintiffs more vulnerable to that danger in violation of the 5th and 14th Amendment[s]." They charge that Gonzalez "abused his governmental power" by preventing Martinez from enforcing the law and by foreseeably placing the victims in danger because of Zuniga. For several reasons, we disagree that these allegations state a constitutional claim. First, neither the text nor the history of the Due Process Clause supports holding that an officer who orders another officer to refrain from arresting a suspected drunk driver has committed a constitutional tort. The Due Process Clause is intended to curb governmental abuse of power over the people it governs, not to require state officers to protect the people from each other. See DeShaney, 489 U.S. at 196, 109 S. Ct. at 1003; Davidson v. Cannon, 474 U.S. 344, 348, 106 S. Ct. 668, 670 (1986). The guarantee of due process has been limited to situations where a state officer deliberately chooses to deprive a person of life, liberty, or property. See Collins v. City of Harker Heights, 503 U.S. 115, 127 n.10, 112 S. Ct. 1061, 1069 n.10 (1992). Gonzalez's order to Martinez cannot be characterized as a governmental decision to deny the appellants their life, liberty, or property -- especially since he was never subjectively aware that they were on the highway. A contrary conclusion would "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be

5

administered by the States." Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160 (1976).

Second, the appellants have cited no case extending substantive due process to situations similar to the facts of this case. Appellants rely on the holding of Ross[5] and dicta in Salas[6] to support their argument that Gonzalez abused his authority. Those cases, however, are inapplicable because they state or suggest that a government officer can be held liable if he knows a victim faces actual distress but uses his authority to interfere or prohibit assistance, thereby directly increasing the harm suffered by the victim. In Ross, for instance, the Seventh Circuit held that a deputy sheriff committed a constitutional tort by ordering qualified bystanders not to rescue a drowning boy. See 910 F.2d at 1432-33. Unlike the deputy in Ross, Gonzalez was neither aware of an immediate danger facing a known victim, nor did he use his authority to prevent the appellants from receiving aid. This "state-created danger" theory is inapposite without a known victim. "The most that can be said of [Gonzalez] in this case is that [he] stood by and did nothing when suspicious circumstances dictated a more active role for [him]." DeShaney, 489 U.S. at 203, 109 S. Ct. at 1007.

---

[5]Ross v. United States, 910 F.2d 1422 (7th Cir. 1990).

[6]Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992). Appellants also cite Piotrowski v. City of Houston, 51 F.3d 512 (5th Cir. 1995), but this court again refused to adopt a state-created danger theory in that case.

Third, because of the open-ended nature of substantive due process, the Supreme Court has cautioned federal courts to use "judicial self-restraint" and "exercise the utmost care" when asked to find new rights secured by the Due Process Clause. Collins, 503 U.S. at 125, 112 S. Ct. at 1068. Based on the Supreme Court's reticence, we decline to issue the novel ruling that when one officer exercises his discretion by ordering another officer not to apprehend a drunk driver, a third party unknown to the officer at the time of the order who is later injured by the drunk driver has a constitutional claim against the ordering officer.

Finally, our holding is virtually compelled by the Supreme Court's decision in DeShaney. See 489 U.S. at 197, 109 S. Ct. at 1004. In DeShaney, the mother of a child abuse victim sued state social workers under § 1983 because they knew that her child was at risk but failed to remove him from the father's home. The Supreme Court rejected the claim, holding that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. The Court reasoned that while the Due Process Clause limits the State's power to take a person's life, liberty or property without due process of law, it does not guarantee "certain minimal levels of safety and security."[7] Id. 489 U.S. at 195, 109 S. Ct. 1003. If a state

---

[7]There is, however, one exception to this rule, not applicable here: "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and

7

officer has no duty to protect an identified person from a known danger presented by a third party, he cannot offend due process by permitting an intoxicated driver to remain on the highway, thereby increasing the risk of harm to unidentified and unidentifiable members of the public. Gonzalez's decision, while imprudent and ultimately tragic, was not sufficiently willful and targeted toward specific harm to remove the case into the domain of constitutional law. See Lewis, __ U.S. at __, 118 S. Ct. at 1716 ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense') (quoting Collins, 503 U.S. at 129, 112 S. Ct. at 1071).

The appellants attempt to escape DeShaney's holding by describing their argument as an "abuse of governmental authority" rather than a constitutional failure to protect. This semantic dodge will not do. Other than the factually inapplicable state-created danger cases cited above -- which reflect a theory that this court has not yet accepted -- appellants cite no case, and we have found none, that upholds such an ephemeral distinction.[8]

The appellants also sued Brooks County under § 1983, arguing that it had a custom or policy permitting Gonzalez to interfere with junior officers' attempts to apprehend drunk drivers. As the district court correctly found, however, "[i]f a

---

general well-being." DeShaney, 489 U.S. at 199-200, 109 S. Ct. at 1005.

[8]As noted in n.7, supra, however, a state officer has additional liability when the state takes custody of individuals.

8

person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have <u>authorized</u> [his actions] is quite beside the point." <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986) (per curiam) (emphasis in original); <u>see</u> <u>also</u> <u>Leatherman v. Tarrant County Narc. Intel. and Coord. Unit</u>, 28 F.3d 1388, 1398 n.15 (5th Cir. 1994) (stating that a municipality cannot be liable when the "individual officers have been exonerated of any underlying constitutional violation").

## CONCLUSION

Because the appellants have failed to allege the deprivation of a constitutional right, their § 1983 claim fails and Gonzalez is shielded by his qualified immunity. <u>See</u> <u>Harlow</u>, 457 U.S. at 818, 102 S. Ct. at 2738. The county also has no liability. The judgment of the district court is **AFFIRMED.**